UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| 360 INTERNATIONAL, INC. | CIVIL ACTION NO. 6:19-cv-00325 |
| VERSUS | JUDGE JUNEAU |
| GOMEX OFFSHORE, LTD. | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Currently pending is the motion to transfer venue (Rec. Doc. 14) that was filed by the defendant, GoMex Energy Offshore, Ltd. The plaintiff, 360 International, Inc., opposed the motion. Oral argument was heard on July 11, 2019. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is GRANTED and this matter is transferred to the United States District Court for the Southern District of Texas, Houston Division.

## Background

The plaintiff, 360 International, and the defendant, GoMex, entered into a Master Service Agreement ("MSA") in August 2014. Between August 2018 and January 2019, 360 International performed work for GoMex pursuant to the MSA. In the complaint, 360 International alleged that it "furnished labor, services, equipment, materials or supplies, including but not limited to compressor rebuild, re-engineering, repair and maintenance. . . in connection with the drilling, completion, reworking or operation of" certain oil or gas wells located on offshore

leases on the outer continental shelf. (Rec. Doc. 1 at 3-4). In its briefing, 360 International described the work it performed as "refurbishing compressors and repairing pumps and tanks necessary to ensure GoMex's ongoing production activities" including the installation and testing of the refurbished and repaired equipment on fixed offshore platforms. (Rec. Doc. 20 at 8).

360 International alleged that GoMex failed to pay the full amount invoiced for the work it performed and further alleged that GoMex now owes 360 International over two million dollars. 360 International contended in its complaint that a statutory lien and privilege exists under La. R.S. 9:4861, *et seq.*, and 43 U.S.C. § 1333(a)(2)(A) for the payment of the amount owed. By filing this lawsuit, 360 International seeks to have that lien and privilege recognized and enforced by obtaining a writ of sequestration or a money judgment.

The plaintiff's complaint was filed in this venue. However, the MSA contains a mandatory forum-selection clause, which reads as follows: "Notwithstanding anything to the contrary, the state and federal courts located in Harris County, Texas shall be the sole venue for the resolution of any disputes arising hereunder." (Rec. Doc. 14-2 at 8). Citing this provision of the MSA, GoMex responded to the complaint by filing the instant motion, seeking to have this lawsuit transferred to the federal district court in Houston, Harris County, Texas.

## Law and Analysis

### A. Is the Forum-Selection Clause Mandatory?

A contract's forum-selection clause is mandatory if it requires that litigation arising from the contract be carried out in a given forum.[1] There is a strong presumption in favor of enforcing mandatory forum-selection clauses.[2] "For cases where all parties signed a forum selection contract, the analysis is easy: except in a truly exceptional case, the contract controls."[3] In this case, there is no dispute that the forum-selection clause in the parties' MSA is mandatory. Both parties signed the MSA containing the forum-selection clause, and the forum-selection clause states that the sole venue for the resolution of any disputes arising under the MSA is the state or federal courts in Harris County, Texas. Furthermore, in their briefing, both parties acknowledged that the clause is mandatory. (Rec. Doc. 14-1 at 1; Rec. Doc. 20 at 5).

---

[1] *Weber v. PACT XPP Technologies, AG*, 811 F.3d 758, 768 (5th Cir. 2016).

[2] *Al Copeland Investments, L.L.C. v. First Specialty Insurance Corporation*, 884 F.3d 540, 543 (5th Cir. 2018); *Weber v. PACT XPP Technologies, AG*, 811 F.3d at 773.

[3] *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014).

## B. Is the Forum-Selection Clause Reasonable?

The presumption favoring the enforcement of mandatory forum-selection clauses may be overcome by a showing that the clause is unreasonable.[4] A forum-selection clause may be unreasonable if

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.[5]

In this case, GoMex urged the court to enforce the forum-selection clause while 360 International argued that enforcement of the forum-selection clause would be unreasonable. More particularly, 360 International argued that enforcement of the clause would be unreasonable because it would deny 360 International its day in court, would deprive it of a remedy, and would contravene a strong public policy of the State of Louisiana. 360 International also argued that the dispute underlying this lawsuit does not fall within the scope of the MSA's forum-selection clause.

---

[4] *Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995) (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)).

[5] *Calix-Chacon v. Global Intern. Marine, Inc.*, 493 F.3d 507, 511 (5th Cir. 2007) (quoting *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997)) (internal quotation marks omitted). See, also, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

**Denial of Day in Court.**

The plaintiff alleged that the court has subject-matter jurisdiction either (a) under 28 U.S.C. § 1331 because the dispute arises under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1349(b)(1); or (b) under 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in controversy exceeds the statutory minimum. The plaintiff further alleged that if subject-matter jurisdiction is based on diversity, the substantive law of the forum state would be applied[6] – Louisiana law if the case remains in this forum but Texas law if the case were transferred.[7] The plaintiff then argued in opposition to the transfer motion that the application of Texas law would deprive the plaintiff of its day in court and deprive it of remedies available under Louisiana law.

360 International argued that it would be deprived of its day in court and deprived of certain remedies if the case were transferred to Texas because the relevant Texas lien or privilege statute does not extend to production of

---

[6] *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009); *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008).

[7] The plaintiff's argument ignores the fact that the MSA includes a choice-of-law provision, stating that the MSA is to be construed under and governed by maritime law or, if maritime law is not applicable, construed under and governed by Texas law without regard to conflicts-of-law principles. The MSA does not say that disputes arising under the MSA are to be governed by Texas law. (Rec. Doc. 21-1 at 8). However, the defendant contends that the MSA mandates the application of Texas law to the parties' dispute. This Court declines to decide whether Texas law or Louisiana law applies.

hydrocarbons and requires the posting of security (which 360 International alleged it is not in a position to post) while the relevant Louisiana statute extends to the production of hydrocarbons but does not require security to be posted. While having to post security might be a financial burden that 360 International might prefer not to incur and might make litigation in Texas more onerous than litigation in Louisiana, the statutory requirement for security under Texas law is not an all-out bar to litigation that would deprive 360 International of its day in court. Therefore, transferring this case to Texas would not result in 360 International being denied its day in court.

**Denial of a Remedy.**

360 International argued that it would be deprived of remedies available under the Louisiana Oil Well Lien Act if the forum-selection clause were enforced and the matter transferred to Texas. But the unavailability of some particular remedy in the transferee court does not require the forum-selection clause to be enforced. It is only when transferring the case to a forum that would effectively afford no remedy whatsoever that this factor should control. "[T]he fact that *certain types of remedies* are unavailable in the foreign forum does not change the calculus if there exists a basically fair court system in that forum that would allow the plaintiff to seek *some*

6

relief."[8]  Therefore, transferring this case to Texas would not result in 360 International having no remedies at all.

### Louisiana's Strong Public Policy.

360 International argued that the MSA's forum-selection clause is unreasonable and therefore should not be enforced because it is contrary to a strong public policy of the State of Louisiana, established in La. R.S. 9:2779. That statute reads as follows:

> The legislature finds that, with respect to construction contracts, subcontracts, and purchase orders for public and private works projects, when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.

360 International argued that the MSA is a construction contract and, therefore, the forum-selection clause is contrary to public policy. However, Article 2779 does not define the term "construction contract." Therefore, 360 International compared the work done under the MSA to the type of work that has been characterized as arising under a construction contract. Notably, however, the parties did not direct this Court to any case in which an MSA was held to be a construction contract for purposes of

---

[8] *Weber v. PACT XPP Technologies, AG*, 811 F.3d at 774 (emphasis in original) (citing *Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138, 1144-45 (5th Cir. 1989)).

7

Article 2779 or to any case in which this same argument was previously made with regard to an MSA. MSAs are very common in the oil and gas industry, and Texas companies frequently use MSAs to contract with Louisiana companies. Therefore, this Court finds it curious that, if such contracts are construction contracts under Article 2779, no court has previously been confronted with this issue.

Another Louisiana statute does define the term "construction contract." La. R.S. 9:2780.1, which is found in the same chapter of the Louisiana revised statutes as Article 2779, defines a "construction contract" as follows:

> "Construction contract" shall mean any agreement for the design, construction, alteration, renovation, repair, or maintenance of a building, structure, highway, road, bridge, water line, sewer line, oil line, gas line, appurtenance, **or other improvement to real property**, or repair or maintenance of a highway, road, or bridge, including any moving, demolition, or excavation, except that no deed, lease, easement, license, or other instrument granting an interest in or the right to possess property will be deemed to be a construction contract even if the instrument includes the right to design, construct, alter, renovate, repair, or maintain improvements on such real property.[9]

In general terms, this article limits the applicability of the term "construction contract" to a contract pertaining to a building, structure, road, or other improvement to real property. The work that 360 International undertook for GoMex – refurbishing and installing compressors, pumps, and tanks – does not appear to be

---

[9] La. R.S. 9:2780.1(2)(a) [emphasis added].

the type of permanent improvements to real property contemplated by Article 2780.1.

Furthermore, one court in this district rejected the applicability of Article 2779, seeing "no reason why it should supersede settled law in this circuit for determining validity/enforceability of forum selection clauses."[10] Courts in the Middle District of Louisiana have found that a forum-selection clause "is simply a factor, albeit significant, to be considered by the Court" in determining whether venue should be changed for the convenience of the parties.[11]

Further, even if the MSA at issue in this lawsuit is a construction contract, as that term is used in Article 2779, there are competing interests to be weighed. In particular, there is a strong policy interest in holding parties to their contractual bargains.[12] As the United States Supreme Court said, "[i]n all but the most unusual cases. . ., 'the interest of justice' is served by holding parties to their bargain."[13] The Louisiana Supreme Court recently reiterated this principle, stating:

---

[10] *Chaney Trucking & Development, Inc. v. Asset Group, Inc*., No. 2:16-cv-782, 2016 WL 6608390, at *3 (W.D. La. Nov. 8, 2016).

[11] See, e.g., *Berg v. Sage Environmental Consulting of Austin, Inc*., No. 04-885-B-2, 2005 WL 8158565, at *5 (M.D. La. June 8, 2005); *The Shaw Group v. Natkin & Company*, 907 F.Supp. 201, 204 (M.D. La. 1995).

[12] See, e.g., *Haynsworth v. The Corporation*, 121 F.3d at 970.

[13] *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 66 (2013).

[F]reedom to contract is itself a countervailing important public policy in Louisiana, and the right to freely contract must encompass the correlative power to agree to bring suit under that contract in a particular forum. . . . Contractually selecting a forum for resolving disagreements provides certainty and consistency for parties engaged in enterprises in multiple states, and the elimination of uncertainty relative to the location of litigation by agreement in advance of an acceptable forum to both parties is an indispensable element of trade, commerce[,] and contracting.[14]

This Court finds that the public policy favoring the freedom to contract – encompassing the freedom to select a venue for future litigation – must prevail over the public policy articulated in Article 2779. This Court therefore concludes that it would not be unreasonable to enforce the forum-selection clause set forth in the parties' MSA.

C. **Scope of the Forum-Selection Clause.**

360 International argued that the dispute underlying this lawsuit does not fall within the scope of the parties' MSA. 360 International presented no statutory or jurisprudential support for that argument. Further, although there likely were purchase orders, invoices, or other more specific types of paperwork detailing the precise nature and extent of the work that 360 International did for GoMex, it is undisputed that the MSA governed the relationship between the parties.

---

[14] *Creekstone Juban I, L.L.C. v. XL Insurance America, Inc.*, 2018-0748 (La. 05/08/19), 2019 WL 2041798, at *6 (internal quotation marks and citations omitted).

10

Accordingly, this Court finds that the dispute underlying this lawsuit falls within the scope of the MSA.

D.  **Enforcement of the Forum-Selection Clause.**

The appropriate way to enforce a forum-selection clause is through the doctrine of *forum non conveniens*,[15] which is codified at 28 U.S.C. § 1404(a) "for the subset of cases in which the transferee forum is within the federal court system."[16] This case is one of those. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In resolving a typical Section 1404(a) motion, the court considers various private-interest and public-interest factors.[17]

> The presence of a valid forum-selection clause simplifies the analysis in two ways. First, the plaintiff's choice of forum merits no weight because, by contracting for a specific forum, the plaintiff has effectively exercised its venue privilege before a dispute arises. Second, the private-interest factors weigh entirely in favor of the preselected forum,

---

[15] *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) (quoting *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. at 580).

[16] *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. at 60.

[17] *Weber v. PACT XPP Technologies, AG*, 811 F.3d at 766.

so that the district court may consider arguments about public-interest factors only.[18]

Therefore, a valid forum-selection clause controls the *forum non conveniens* inquiry "[i]n all but the most unusual cases."[19]

The public-interest factors to be considered include the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the parties' interest in having the trial of a diversity case in a court that is at home with the law to be applied.[20] However, "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum selection clauses should control except in unusual cases."[21] Furthermore, these factors are neither exhaustive nor exclusive and no one of them is dispositive.[22]

This Court having found that the forum-selection clause is mandatory and reasonable and that the parties' dispute falls within the scope of the contract containing the forum-selection clause, this Court must determine whether transfer of

---

[18] *Barnett v. DynCorp International, L.L.C.*, 831 F.3d at 300 (internal quotation marks and citations omitted) (citing *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. at 63-64).

[19] *Barnett v. DynCorp International, L.L.C.*, 831 F.3d at 300 (quoting *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. at 64).

[20] *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

[21] *In re Rolls Royce Corp.*, 775 F.3d at 678; *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. at 64.

[22] *In re Volkswagen*, 545 F.3d at 315.

venue is appropriate under a modified *forum non conveniens* analysis, considering only the public interest factors and giving the plaintiff's choice of forum no weight.[23] Ultimately, a Section 1404(a) transfer is committed to the sound discretion of the court.[24]

**Court Congestion.**

This factor favors a district that can bring a case to trial faster.[25] The parties presented statistics concerning the relative congestion of the federal district courts in Lafayette, Louisiana and Houston, Texas but neither party's statistics showed with any certainty that the case will get to trial faster in Houston than in Lafayette or vice versa. Furthermore, the parties did not identify any administrative difficulties flowing from court congestion that would favor one forum over the other. Therefore, this factor does not weigh against transfer.

**Having Localized Interests Decided at Home.**

This factor analyzes the "factual connection" that a case has with the transferee venue and also with the transferor venue.[26] 360 International is domiciled

---

[23] *Barnett v. DynCorp International, L.L.C.*, 831 F.3d at 308-09.

[24] *Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 761 (5th Cir. 1989) (citing *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir.1988)).

[25] See *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (5th Cir. 2009).

[26] See *In re Volkswagen AG*, 371 F.3d at 206.

in Louisiana while GoMex is domiciled in Texas. The work actually performed under the contract was performed in Louisiana – partially on land and partially on offshore platforms. Thus, there is a factual connection with both Louisiana and Texas, neither of which clearly predominates. Consequently, this factor does not weigh against transfer

**The Forum's Familiarity with the Law to be Applied.**

Regardless of whether Texas law or Louisiana law is ultimately applied in this case, this Court is confident that the two venues are equally capable of applying the governing law. Therefore, this factor does not weigh against transfer.

**Conflicts of Law.**

The final public-interest factor is "the avoidance of unnecessary problems of conflict of laws, or in the application of foreign law."[27] 360 International argued that this case presents significant conflicts-of-law issues, while GoMex argued that there are no such issues in this case. First, 360 International argued that it must be decided whether Texas law or Louisiana state law, as borrowed federal law under the Outer Continental Shelf Lands Act, must be applied to the dispute, while GoMex countered that the MSA requires Texas law to be applied without reference to any conflict-of-law analysis. The issue of which state's law should be applied to the

---

[27] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). See, also, *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).

merits of this case will have to be resolved regardless of whether the suit remains in Lafayette or is transferred to Houston. Therefore, denying the motion to transfer would not avoid the necessity of undertaking an analysis of this issue.

Second, 360 International argued that judicial economy requires the same law being applied in a suit against it by one of its subcontractors should be applied in this lawsuit so that liens and privileges may be consistently ranked. 360 International did not explain why a judge in Texas would be unable to properly rank the privileges, if necessary. Additionally, 360 International supported its argument with reference to a case from the Eastern District of Louisiana that denied a transfer motion due to judicial economy concerns. But that case was very different from this one. There, the court found "extraordinary circumstances. . . unrelated to the convenience of the parties that justif[ied]denial of the motion to transfer."[28] More particularly, the court found that the case had already been pending for six years, numerous motions had been filed and ruled upon, the court was familiar with the case, and substantive rulings had already been made.[29] None of those factors are relevant here since this case remains in its infancy.

---

[28] *Bollinger Shipyards Lockport, L.L.C. v. Huntington Ingalls Inc.*, No. 08-4578, 2015 WL 65298, at *4 (E.D. La. Jan. 5, 2015).

[29] *Bollinger Shipyards Lockport, L.L.C. v. Huntington Ingalls Inc.*, 2015 WL 65298, at *4.

15

For these reasons, this Court finds that the public-interest factors do not outweigh the presumption in favor of enforcing the MSA's forum-selection clause.

## Conclusion

For the reasons set forth above,

IT IS ORDERED that the pending motion to transfer venue, which was filed on behalf of the defendant, GoMex Energy Offshore, Ltd., is GRANTED, and the Clerk is ordered to transfer this action to the United States District Court for the Southern District of Texas.

Signed at Lafayette, Louisiana, this 1st day of July 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE